NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO
C.S., H.S., and C.S.

No. 1 CA-JV 23-0216

FILED 08-22-2024

---

Appeal from the Superior Court in Maricopa County
No. JD41077
The Honorable Suzanne Scheiner Marwil, Judge

**AFFIRMED**

---

COUNSEL

Law Office of H. Clark Jones, LLC, Mesa
By H. Clark Jones
*Counsel for Appellant Corey S.*

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant Christina R.*

Arizona Attorney General's Office, Tucson
By Jennifer L. Thorson
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Daniel J. Kiley and Judge D. Steven Williams joined.

---

**C A T T A N I**, Judge:

¶1 Corey S. ("Father") and Christina R. ("Mother") appeal the superior court's ruling terminating their parental rights to their three children. For reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 Mother and Father have two daughters, born in 2017 and 2020, and one son, born in 2022.

¶3 In mid-2021 (before the son was born), the Department of Child Safety ("DCS") discovered Father and Mother were using drugs in their home with their daughters present, leading to neglect of the children and unsanitary living conditions. Mother admitted using methamphetamine and fentanyl; others reported that Father, too, used methamphetamine. DCS took both daughters into care, and the superior court later found them dependent as to both parents.

¶4 Over a year later, their son was born substance-exposed to fentanyl. Mother tested positive for amphetamines and fentanyl at the birth, and she confirmed that she had been using fentanyl and methamphetamine throughout the pregnancy despite several attempts at drug treatment. Father was in an inpatient substance-abuse treatment program at the time and did not expect to be discharged for several months. DCS took the son into care, and the superior court later found him dependent as to both parents.

¶5 DCS offered the parents a variety of services throughout the dependency, largely directed toward addressing substance abuse and building parenting skills. After a slow start with supervised visitation, the parents became more consistent with visits and strengthened their bond with the children. The eldest child, who was more verbal than the others, expressed a desire to spend more time with her parents and to go home. But neither parent completed a parenting-skills program. And even with repeated referrals for substance-abuse testing and treatment, neither parent

was able to maintain sobriety (although Father stayed sober over a few discrete periods).

**¶6** Ultimately, DCS moved to terminate both Mother's and Father's parental rights on grounds of chronic substance abuse as to all three children, 15 months' time-in-care as to their daughters, and 6 months' time-in-care as to their son. *See* A.R.S. § 8-533(B)(3), (8)(b)–(c). After a contested termination adjudication hearing, the superior court terminated Mother's and Father's parental rights as to all three children, finding that all alleged statutory grounds supported severance and that severance was in the children's best interests. Both Father and Mother timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

**¶7** The superior court may terminate a parent–child relationship if clear and convincing evidence establishes at least one statutory ground for severance and a preponderance of the evidence shows severance to be in the child's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We review a severance ruling for an abuse of discretion, deferring to the superior court's credibility determinations and resolution of conflicting facts. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018); *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶8** Here, Father primarily argues the superior court erred by finding that DCS provided adequate reunification services. Mother challenges only the court's best-interests finding. We address each contention in turn.

## I. Father.

**¶9** Each of the statutory severance grounds at issue here requires a showing that DCS made reasonable and diligent efforts to preserve the family by providing appropriate rehabilitative services. *See Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 & n.3 (App. 2005) (requiring DCS to make reasonable efforts to reunify the family under A.R.S. § 8-533(B)(3)); A.R.S. § 8-533(B)(8)(b)–(c) (requiring DCS make "a diligent effort to provide appropriate reunification services" to the parent). To fulfill this obligation, DCS must provide services with a "reasonable prospect of success" to afford the parent the time and opportunity to become, if possible, a safe and effective parent. *See Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). But DCS need not offer "every

conceivable service" or those that would prove futile. *See id.* at ¶ 37; *Maricopa Cnty. Juv. Action No. JS–501904*, 180 Ariz. 348, 353 (App. 1994). In assessing the adequacy of reunification services, the court considers the totality of the circumstances, including the services DCS offered throughout the dependency and the parent's participation in those services. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 22–23, ¶¶ 48, 49 (App. 2019).

¶10        Here, DCS provided Father case management, substance-abuse assessment and treatment, substance-abuse aftercare, team decision-making meetings, transportation, parenting-skills programs and support, supervised visitation, and referrals to community resources. As to substance abuse specifically, Father reported a long history of drug use and of relapsing after maintaining sobriety for, at most, a couple of months. He entered multiple treatment programs over the course of the dependency, including several inpatient programs, but would ultimately relapse after discharge. Despite a sincere motivation to address his substance-abuse issues, Father was discharged before completing inpatient treatment due to insurance issues. After discharge, DCS service providers offered Father options for the community resources necessary for him to access outpatient treatment or other sobriety supports. But even though Father had acknowledged Mother as a trigger for his drug use, he declined the alternative options and continued to rely on Mother instead.

¶11        Father did not object to the adequacy of the services provided or request additional services until after the dependency had been in place for over two years—months after the severance motion was filed. Father himself testified that there were no services he needed or asked for that went unprovided. Because Father did not timely contest the adequacy of services, he has arguably waived this argument on appeal. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 18 (App. 2014).

¶12        Waiver aside, Father's claim nevertheless fails. Father challenges the adequacy of services in two regards. First, he argues DCS failed to provide adequate substance-abuse treatment because it failed to assist him in finding and funding alternative inpatient treatment or stepdown programs when he was discharged from treatment due to insurance issues. But Father had an open referral for outpatient services throughout the case. And DCS service providers gave Father shelter information (as a step toward continued access to substance-abuse treatment services) and community resources for treatment and support, but Father declined to pursue these alternatives.

¶13  Second, Father asserts that, despite knowing he had significant mental-health diagnoses, DCS failed to provide him a psychological evaluation or treatment and failed to provide accommodations for his learning difficulties in other services.  But DCS acknowledged Father's preexisting diagnoses and instructed providers regarding his need for additional assistance.  Father testified, for example, that the parenting-skills provider gave him additional assistance, attempting to help him understand the program.  Although DCS prioritized Father's sobriety before further addressing his mental-health concerns, Father was already on medication for his diagnosed conditions, and his inpatient programs included group and individual counseling.  Accordingly, the superior court did not err by finding DCS had met its obligation to provide reasonable reunification services.

¶14  Apart from contesting DCS's reunification efforts, Father does not otherwise challenge the superior court's findings as to statutory grounds for severance based on chronic substance abuse or as to the children's best interests, and the record supports the court's findings.  *See* A.R.S. § 8-533(B)(3).  Because we affirm the termination as to all three children on this basis, we need not address the other statutory severance grounds.  *See Jesus M.*, 203 Ariz. at 280, ¶ 3.

## II.  Mother.

¶15  Mother challenges only the court's finding that severance is in the children's best interests; she does not contest the existence of statutory grounds for termination.  Termination of parental rights is in a child's best interests if the child would benefit from severance or be harmed by a denial of severance.  *Alma S.*, 245 Ariz. at 150, ¶ 13.  Stability and security for the child are of primary importance.  *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016).  The child's prospects for adoption and whether the placement is meeting the child's needs are relevant considerations, as is the parent's rehabilitative efforts.  *Alma S.*, 245 Ariz. at 148, ¶ 1; *Demetrius L.*, 239 Ariz. at 3–4, ¶ 12.

¶16  Mother argues the court erred by finding both benefit from severance and detriment absent severance, asserting the record does not support findings that the children were in adoptive placements, were otherwise adoptable, or needed permanency.  But the case manager testified about the children's adoptive placements as well as their adoptability generally, and we defer to the superior court's decision to credit this testimony.  *See Alma S.*, 245 Ariz. at 151, ¶ 18. Moreover, the evidence showed that the placements were meeting the children's needs,

including their special needs, which likewise supports a best-interests finding. *See Demetrius L.*, 239 Ariz. at 4, ¶ 12.

¶17 Mother asserts that the superior court failed to adequately consider her strong bond with and love for the children or her rehabilitative efforts and recent progress. But the court stated expressly that it had "considered the totality of the circumstances, including Mother's . . . efforts toward reunification, [and] the parent–child bond." Moreover, the existence of a bond is not alone dispositive. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98–99, ¶ 12 (App. 2016). And as to rehabilitative efforts, at the time of the hearing, Mother had been in treatment for less than two weeks and sober only a few days longer than that. Although the court observed that Mother "now seems committed to the [inpatient treatment] program," the record supports the finding that maintaining the parent–child relationship would be detrimental due to Mother's continued struggles with addiction. *See id.* at 98, ¶ 11; *see also Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 17 (App. 2016) ("[A] child's interest in permanency must prevail over a parent's uncertain battle with drugs.") Accordingly, the superior court did not err by finding severance to be in the children's best interests.

**CONCLUSION**

¶18 We affirm.

